## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DSS SUSTAINABLE SOLUTIONS USA, INC.,<br><br>     **Plaintiff,**<br><br>v.<br><br>**LEARNING CURVE ENTERTAINMENT INC., NO SKY STUDIOS, INC., LEON DEREK LEONIDOFF, AND TYMM SMITH,**<br><br>     **Defendants.** | **Court No. 1:25-cv-00981-JCG** |

## <u>OPINION AND ORDER</u>

[Granting in part and denying in part Defendants' Partial Motion to Dismiss.]

Dated:  June 23, 2026

Beth Moskow-Schnoll and Alan C. Cardenas-Moreno, Ballard Spahr LLP, of Wilmington, DE; Lynn E. Rzonca and Benjamin N. Simler, Ballard Spahr LLP of Philadelphia, PA.  Attorneys for Plaintiff DSS Sustainable Solutions USA, Inc.

Hugh Marbury and Joshua Seiler, Cozen O'Connor, of Wilmington, DE.  Counsel for Defendants Learning Curve Entertainment Inc. and Leon Derek Leonidoff. Jeremy A Tigan and Cameron P. Clark, Morris, Nichols, Arsht & Tunnell LLP, of Wilmington, DE; Alexander R. McDaniel, Kiernan Trebach, of Virginia Beach, VA.  Attorneys for Defendants No Sky Studios, Inc., and Tymm Smith.

Choe-Groves, Judge:  Plaintiff DSS Sustainable Solutions USA, Inc.

("Plaintiff" or "DSS Sustainable") filed this case against Defendants Learning

Court No. 1:25-cv-00981                                                        Page 2

Curve Entertainment Inc., Leon Derek Leonidoff, No Sky Studios, Inc., and Tymm

Smith (collectively, "Defendants") alleging breach of contract, tortious

interference, unfair competition, conspiracy to injury another in trade, and unjust

enrichment.  First Am. Compl. at ¶¶ 61–113, (D.I. 27-3).

Before the Court is Defendants' Partial Motion to Dismiss ("Partial Motion

to Dismiss") (D.I. 32).  See Defs.' Opening Br. Supp. Partial Mot. Dismiss ("Defs.'

Br.") (D.I. 33).

For the reasons discussed below, Defendants' Partial Motion to Dismiss is

granted in part and denied in part.

## BACKGROUND

DSS Sustainable is a Delaware corporation that provides global consulting

services related to workplace safety consulting, process safety and asset integrity,

enterprise risk management, and business continuity and crisis management.  First

Am. Compl. at ¶¶ 1, 9–11.  DSS Sustainable creates sustainable, risk-based

decision-making processes and programs for its clients and does so by drawing on

proprietary processes and methodologies that it has developed over the past

decade.  Id. at ¶¶ 11–20.

Defendant Leon Derek Leonidoff is alleged to be a resident of Virginia who

does business as Learning Curve Entertainment Inc.  Id. at ¶ 2.  Defendant

Learning Curve Entertainment Inc. is alleged to be a Virginia corporation with its

Court No. 1:25-cv-00981                                              Page 3

principal place of business in Virginia.  Id. at ¶ 4.  Defendant Tymm Smith is

alleged to be a resident of Virginia who does business as No Sky Studios, Inc.  Id.

at ¶ 3.  Defendant No Sky Studios, Inc. is alleged to be a Tennessee corporation

that is registered in Nashville, Tennessee, but operates primarily or exclusively

through Tymm Smith from his Virginia residence.  Id. at ¶ 5.

Plaintiff alleges that DSS Sustainable engaged each of the Defendants as

independent contractors.  Id. at ¶ 21.  Defendant Leonidoff and his company,

Defendant Learning Curve Entertainment, Inc., were engaged on or about

November 10, 2009, to provide services pursuant to more than 100 contract

addenda and Statements/Scope of Work documents.  Id. at ¶ 22.  Defendant Smith

and his company, Defendant No Sky Studios, Inc., were engaged on or about

August 5, 2013, to provide services pursuant to nearly 200 contract addenda and

Statements/Scope of Work documents.  Id. at ¶ 23.  DSS Sustainable and

Defendants Leonidoff and Learning Curve Entertainment, Inc. entered into a

Master Services Agreement ("MSA") that became effective on February 28, 2025,

and superseded the prior master agreements.  Id. at ¶ 27; see Ex. A ("Master

Services Agreement") (D.I. 18-1).[1]  DSS Sustainable and Defendants Smith and

---

[1] Plaintiff placed a copy of a Master Service Agreement between it and Defendant Smith on the record when it filed a response brief for an earlier motion to dismiss. The Parties refer to that language when discussing the MSAs between all Defendants generally, and therefore the Court presumes that the relevant language was the same in the MSA with Defendant Leonidoff.  The First Amended

No Sky Studios, Inc. entered into a MSA that became effective on February 20, 2025, and superseded the prior master agreements.  Id. at ¶ 29; see Master Services Agreement.

Plaintiff alleges that the MSA gave DSS Sustainable rights to all work product and prohibited Defendants from sharing DSS Sustainable's intellectual property or information provided by DSS Sustainable.  Id. at ¶¶ 33–40.

DSS Sustainable has a longstanding relationship with the Port of Virginia and provides safety consulting and related services.  Id. at ¶¶ 41–42.  In June 2025, DSS Sustainable submitted an invited bid to the Port of Virginia that was rejected. Id. at ¶¶ 43–44.  DSS Sustainable alleges that on or around May and June 2025, Defendants agreed to submit to the Port of Virginia a bid and supporting materials for the same project, and used materials and information owned by DSS Sustainable, including materials from DSS Sustainable projects that Defendants were contracted to work on by DSS Sustainable.  Id. at ¶ 45.  Defendants were awarded the winning bid.  Id. at ¶ 50.  DSS Sustainable learned of Defendants' conduct when a DSS Sustainable representative attended a meeting in Virginia, during which a Port of Virginia employee presented a slide deck showing Defendants as the bid winners.  Id. at ¶ 51.

---

Complaint's discussion of the MSAs' language also indicates that the relevant provisions were identical.  See First Am. Compl. at ¶¶ 33–40.

DSS Sustainable contacted Defendants, demanding that they cease and desist from the unauthorized use of DSS Sustainable's information, return all DSS Sustainable information, and disclose the materials they had submitted to the Port of Virginia.  Id. at ¶ 52.  Plaintiff alleges that Defendants are still in possession of DSS Sustainable's materials and confidential information.  Id. at ¶¶ 54–58.  Plaintiff alleges that Defendants have continued to provide services to the Port of Virginia and have continued to use DSS Sustainable's proprietary materials, information, and methodologies for the development, release, and support of the Port of Virginia's safety brand.  Id. at ¶ 59.

Plaintiff filed its Complaint on August 5, 2025.  Compl. (D.I. 1).  On April 10, 2026, the Court granted Plaintiff leave to amend the Complaint.  Order (Apr. 10, 2026) (D.I. 31).  Defendants' Partial Motion to Dismiss followed.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that pleadings contain a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(1).  If pleadings fail to state a claim, in whole or in part, on which a court may grant relief, a defendant may seek to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6).  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal ("Iqbal"),

Court No. 1:25-cv-00981                                               Page 6

556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly ("Twombly"), 550

U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  Id.  Plausibility requires "more

than a sheer possibility that a defendant has acted unlawfully."  Id.  In considering

a motion to dismiss, the Court must assume the factual allegations contained in the

complaint to be true and draw all reasonable inferences in favor of the non-moving

party.  Twombly, 550 U.S. at 555–56.  However, "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not

suffice" to state a claim.  Iqbal, 556 U.S. at 678; see Donald J. Kochan, While

Effusive, "Conclusory" is Still Quite Elusive: The Story of a Word, Iqbal, and a

Perplexing Lexical Inquiry of Supreme Importance, 73 U. Pitt. L. Rev. 215, 307

(2011) ("'[C]onclusory' sets a standard that requires a certain degree of case-by-

case, contextual analysis").

## DISCUSSION

Defendants move to partially dismiss the First Amended Complaint, arguing

that Plaintiff's tort and unjust enrichment claims are governed by Delaware law

according to the MSA's choice-of-law provision, and the claims are precluded

under Delaware's anti-bootstrapping doctrine.  Defs.' Br. at 7–10.  Alternatively,

Defendants contend that Plaintiff's tort claims must be dismissed for failure to state a claim under both Delaware and Virginia law. Id. at 10–22.

## I.      Choice of Law and Plaintiff's Tort and Unjust Enrichment Claims

The Parties dispute whether the choice-of-law provision in the MSA should be interpreted to cover all of Plaintiff's claims, whether sounding in contract or tort. Id. at 7–9; Pl.'s Br. Opp'n Defs.' Partial Mot. Dismiss ("Pl.'s Resp. Br.") at 4–11, (D.I. 39). Neither Party disputes that the MSA's choice-of-law provision establishes that Plaintiff's breach of contract claim shall be governed by Delaware law. See generally, Defs.' Br; Pl.'s Resp. Br.

> Section 15 of the MSA states in relevant part:
>
> 15.3. This Agreement shall be governed by, and construed and enforced in accordance with, the law of the State of Delaware without giving effect to the principles of conflicts of law. Each Party consents to the exclusive jurisdiction of, and service of process by, the United States Court for Delaware or the state courts of Delaware with respect to this Agreement.

Master Services Agreement at § 15.3.

The choice of law provision does not contain broad language stating that Delaware law shall govern disputes "arising out of or relating to" the MSA, nor does it contain language stating that Delaware law shall govern "all disputes that may arise" under the MSA. See Huffington v. T.C. Group, LLC, No. N11C-01-030, 2012 WL 1415930, at *11 (Del. Super. Ct. Apr. 18, 2012) ("The choice of law provision, without language such as '*arising out of or relates to*,' only requires

the Court to apply Delaware law to claims challenging the terms and provisions of

the Subscription Agreement." (emphasis in original)); Organ v. Byron, 435 F.

Supp. 2d 388, 392 (D. Del. 2006) (distinguishing clauses limiting their reach to the

"'rights of the parties' derived from the contract" from those extending to

"all . . . aspects of the Agreement"); but see Market Am., Inc. v. Google, Inc., No.

09-494-GMS, 2011 WL 1485616, at *3 (D. Del. Apr. 19, 2011) (holding that the

parties intended for Delaware law to govern all disputes related to a license

agreement, whether sounding in contract or tort, because the choice of law

provision also covered disputes "arising out of or relating to" the agreement).

The facts in this case, without the "arising out of or relating to" language,

support a narrow reading of the provision restricting its application to contractual

disputes arising directly from the MSA.  It is clear to the Court that the narrow

provision does not apply more broadly to related conflicts arising from the MSA.

Accordingly, the Court will assess Defendants' arguments regarding duplicative

claims by analyzing Delaware and Virginia law, as these are the states' laws

addressed specifically by the Parties in their briefing.

## II.    Whether Plaintiff's Tort and Unjust Enrichment Claims are Duplicative of Plaintiff's Contract Claim

Defendants argue that Plaintiff's tort and unjust enrichment claims are

premised on Defendants' alleged violations of the MSA, and must be dismissed

because Delaware law requires a plaintiff to sue in contract and not tort when an

action is based entirely on a breach of contract rather than a violation of an independent duty.  Defs.' Br. at 9–10.  Defendants aver that Virginia law applies a similar "source of duty" analysis that precludes Plaintiff from asserting its tort claims.  Defs.' Reply Br. Supp. Mot. Dismiss ("Defs.' Reply Br.") at 4, (D.I. 45).

Plaintiff argues that neither Delaware nor Virginia law precludes the tort and unjust enrichment claims because both states recognize that there are claims in tort for which the duties arise not from the contract itself but from a common law corollary of the contract.  Pl.'s Resp. Br. at 9–11.  Plaintiff contends that an unjust enrichment claim necessarily assumes the absence of a contract, and is unaffected by bootstrapping or source of duty rules.  Id. at 10.

### A.    Delaware

The prevailing law in Delaware requires that "a plaintiff bringing a claim based entirely upon a breach of the terms of a contract generally must sue in contract, and not in tort."  Data Mgmt. Int., Inc. v. Saraga, No. 05C-05-108, 2007 WL 2142848, at *3 (Del. Super. Ct. July 25, 2007).  "[I]f the alleged contractual breach is accompanied by the breach of an independent duty imposed by law, the same factual assertions may support both a breach of contract and tort claim."  OC Tint Shop, Inc. v. CPFilms, Inc., No. 17-1677-RGA, 2018 WL 4658211, at *5 (D. Del. Sept. 27, 2018); see Data Mgmt. Int., Inc., 2007 WL 2142848, at *3 ("[T]he same circumstances may give rise to both breach of contract and tort claims if the

plaintiff asserts that the alleged contractual breach was accompanied by the breach of an independent duty imposed by law.").

Section 3 of the MSA states that DSS Sustainable would own all work product developed by Defendants, and would retain all right, title, and interest in and to its data and other intellectual property and materials.  Master Services Agreement at § 3.  Section 3 prohibits Defendants from using or disclosing such data, intellectual property, and other materials.  Id.  Section 8 of the MSA governs confidential information and prohibits Defendants from disclosing information provided by DSS Sustainable or its clients.  Id. at § 8.  Section 8 requires the return of all confidential information upon written request and states that the non-disclosure requirements would remain in effect after termination or expiration of the MSA.  Id.  Defendants were not bound by any exclusivity, non-solicitation, or non-competition provisions.  See generally, Master Services Agreement.

The Court concludes that Plaintiff has not asserted sufficient wrongful conduct beyond the alleged breach of the MSA.  As Delaware courts have held previously, "[e]ven an intentional, knowing, wanton, or malicious action by the defendant will not support a tort claim if the plaintiff cannot assert wrongful conduct beyond the breach of contract itself."  Data Mgmt. Int., Inc., 2007 WL 2142848, at *3.  The Court concludes that Plaintiff has failed to plead any facts showing that Defendants' "alleged contractual breach was accompanied by the

breach of an independent duty imposed by law." Id.  Plaintiff's claims that

Defendants tortiously interfered with DSS Sustainable's business and contractual

relations or conspired to injure its business prospects are supported by factual

allegations premised upon Defendants' alleged retention, use, and disclosure of

DSS Sustainable's confidential information, work product, materials, and

intellectual property.  See First Am. Compl. at ¶¶ 77–89, 95–104, 105–111, 112–

113.  Although Plaintiff frames the unjust enrichment claim as existing necessarily

due to the absence of a contract permitting Defendants to use DSS Sustainable's

materials and intellectual property, the MSA contains language prohibiting

Defendants from such behavior and Plaintiff's unjust enrichment claim also

appears to restate the alleged breach of contract.  Based on the facts pled, the Court

concludes that Defendants' alleged breach of the MSA was not accompanied by an

alleged violation of any duty independent from those derived from the MSA.  See

Data Mgmt. Int., Inc., 2007 WL 2142848, at *3; see also OC Tint Shop, Inc., 2018

WL 4658211, at *6 (dismissing intentional interference with prospective economic

relations and intentional interference with contractual relations claims when the

Plaintiff attributed such claims to the breach of contract).  Plaintiff's claims are not

independent from the MSA, but arise solely therefrom.  Accordingly, the Court

concludes that Delaware law compels dismissal of Plaintiff's Counts II–V.

Court No. 1:25-cv-00981                                           Page 12

### B.      Virginia

Virginia abides by the basic principle that tort claims "aris[ing] from [a] contractual relationship . . . may not be pursued as independent causes of action outside the breach of contract context."  Precision & Performance Auto Care, LLC v. James River Petroleum, Inc., 87 Va. App. 508, 523 (2026) (quoting Kent Sinclair & Leigh B. Middleditch, Jr., *Virginia Civil Procedure* § 2.3[A] (7th ed. 2020)); see Erdmann v. Preferred Research Inc. of Georgia, 852 F.2d 788, 791 (4th Cir.1988) ("[A] tort claim normally cannot be maintained in conjunction with a breach of contract claim.").  "To avoid turning every breach of contract into a tort," Virginia "consistently adhere[s] to the [source-of-duty] rule."  MCR Fed., LLC v. JB&A, Inc., 294 Va. 446, 458 (2017) (quoting Dunn Constr. Co. v. Cloney, 278 Va. 260, 267 (2009)).  Under this rule, "in order to recover in tort, the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract."  Id. (quoting Dunn Constr. Co., 278 Va. at 267).  "[T]he Source of Duty Rule asks whether the alleged tort is based on the defendant's performance of a contractual duty."  ITility, LLC v. Staffing Resource Grp., Inc., No. 1:20-cv-477, 2020 WL 6701361, at *4 (E.D. Va. Nov. 13, 2020); see Richmond Metro. Auth. v. McDevitt St. Bovis, Inc., 256 Va. 553, 558 (1998) ("If the cause of complaint be for an act of omission or non-feasance which, without proof of a contract to do what was left undone, would not

give rise to any cause of action (because no duty apart from contract to do what is complained of exists) then the action is founded upon contract, and not upon tort. If, on the other hand, the relation of the plaintiff and the defendants be such that a duty arises from that relationship, irrespective of the contract, to take due care, and the defendants are negligent, then the action is one of tort." (citations omitted)).

As discussed earlier, Plaintiff's tort and unjust enrichment claims are based entirely on the breach of the MSA, rather than a violation of an independent duty imposed by law. The damages that Plaintiff allegedly incurred resulted from a breach of those duties assumed only by a contract, and Plaintiff's arguments to the contrary have not identified an independent duty that would warrant a different conclusion. See Preferred Sys. Sols., Inc. v. GP Consulting, LLC, 284 Va. 382, 407–408 (2012) (McClanahan, J., concurring) (concluding that when a contractual breach is the sole basis for asserting tortious interference "it is the source of duty rule that renders the claim deficient as a matter of law," and citing cases for the proposition that a contract claim cannot be duplicated as a tort liability by claiming that the breach interfered with plaintiff's business expectations). Accordingly, the Court concludes that Counts II–V should be dismissed under Virginia law, and Plaintiff's sole remedy is in contract for the alleged breach of the MSA.

Because the Court has determined that Plaintiff's tort and unjust enrichment claims must be dismissed under both Delaware or Virginia law, the Court need not

Court No. 1:25-cv-00981                                        Page 14

opine on the Parties' remaining arguments concerning whether Delaware or

Virginia law governs Plaintiff's tort and unjust enrichment claims, and whether

those claims were pled with sufficient particularity pursuant to Rule 12(b)(6).

## CONCLUSION

Upon consideration of Defendants' Partial Motion to Dismiss (D.I. 32), and

all other papers and proceedings in this action, it is hereby

**ORDERED** that Defendants' Partial Motion to Dismiss (D.I. 32) is granted

in part and denied in part; and it is further

**ORDERED** that Counts II–V are dismissed; and it is further

**ORDERED** that Plaintiff's Motion to Strike (D.I. 50) is deemed moot.


IT IS SO ORDERED this 23rd day of June, 2026.

                                            /s/ Jennifer Choe-Groves
                                            Jennifer Choe-Groves
                                            U.S. District Court Judge[*]

---

[*]Judge Jennifer Choe-Groves, of the United States Court of International Trade, sitting by designation.